United States District Court
Southern District of Texas

**ENTERED**

February 09, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LINDA MOORE and                          §
THOMAS MOORE, JR.,                       §
                                         §
              Plaintiffs,                §
                                         §
v.                                       §
                                         §
WELLS FARGO BANK, NATIONAL               §    CIVIL ACTION NO. H-20-3299
ASSOCIATION, as TRUSTEE FOR              §
MASTR ASSET BACKED SECURITIES            §
TRUST 2004-OPT2, MORTGAGE                §
PASS-THROUGH CERTIFICATES,               §
SERIES 2004 OPT2; and PHH                §
MORTGAGE CORPORATION,                    §
                                         §
              Defendants.                §

## MEMORANDUM OPINION AND ORDER

Plaintiffs Linda Moore and Thomas Moore, Jr. ("Plaintiffs")
filed this action in the 458th Judicial District Court of
Fort Bend County, Texas, contending that they are the owners of
real property located at 11527 Wittier Bride Lane, Sugar Land,
Texas 77478 (the "Property") and that any claim to the Property by
defendants Wells Fargo Bank, N.A. ("Wells Fargo") and PHH Mortgage
Corporation ("PHH") (collectively, "Defendants") is "unlawful and
void[.]"[1]  Defendants removed the case to this court.[2]  Pending
before the court is Defendants' Motion for Summary Judgment

_____

[1]Plaintiffs' Original Petition, Exhibit D-1 to Defendants'
Notice of Removal, Docket Entry No. 1-4, p. 4 ¶ 1; p. 6 ¶ 11.  All
page citations refer to the page number imprinted at the top of the
page by the court's electronic filing system, CM/ECF.

[2]Defendants' Notice of Removal, Docket Entry No. 1, p. 2 ¶ 3.

("Defendants' MSJ") (Docket Entry No. 15).   For reasons stated
below, Defendants' MSJ will be granted.

## I.   Factual and Procedural Background

On May 27, 2004, plaintiff Thomas Moore, Jr. signed an
Adjustable Rate Note (the "Note") and both Plaintiffs signed a Deed
of Trust providing that they would receive a $170,700.00 loan from
Option One Mortgage Corporation ("Option One") secured by property
located at 11527 Whittier Bridge Ln., Sugar Land, Texas 77478.[3]
The Note provided a loan maturity date of July 1, 2034.[4]  The Deed
of Trust contained an optional acceleration clause that read in
part as follows:

> 26.   Acceleration; Remedies.   If any installments
> under the Note or notes secured hereby is not paid when
> due, or if Borrower should be in default under any
> provision of this Security Instrument,       all sums
> secured by this Security Instrument and accrued interest
> thereon shall at once become due and payable at the
> option of Lender without prior notice, except as
> otherwise required by applicable law, and regardless of
> any prior forbearance.   In such event, Lender, at its
> option, and subject to applicable law, may then or
> thereafter invoke the power of sale and/or any other
> remedies or take any other actions permitted by
> applicable law.

Deed of Trust, Exhibit A-2 to Defendants' MSJ, Docket Entry
No. 15-1, p. 17 ¶ 21.

---

[3]Note, Exhibit A-1 to Defendants' MSJ, Docket Entry No. 15-1,
pp. 6, 8; Deed of Trust, attached as Exhibit 1 to Plaintiffs'
Original Petition, Exhibit D-1 to Defendants' Notice of Removal,
Docket Entry No. 1-4, pp. 22, 29.

[4]Note, Exhibit A-1 to Defendants' MSJ, Docket Entry No. 15-1,
p. 6.

Defendants state that "Option One assigned the Deed of Trust to Wells Fargo through any one of four assignments that were recorded in the real property records of Harris County, Texas."[5] Plaintiffs state that "[t]here are four recorded assignments of the loan on file with the Fort Bend County Property Records[,]" and that "all four assignments are from Option One, or a successor in interest, to Wells Fargo[,]" but Plaintiffs' Original Petition asserted that these assignments "are frauds and forgeries."[6]

Kevin Flannigan, a Senior Loan Analyst employed by PHH, states that "PHH is currently in actual, physical possession of the original wet-ink Note executed by Mr. Moore, which is being held on behalf of Wells Fargo Bank, National Association, . . . ."[7] PHH services the loan associated with the Note and Deed of Trust.[8] PHH was formerly known as Ocwen Loan Servicing, LLC ("Ocwen").[9]

On November 18, 2013, Plaintiffs executed a Rescission of Foreclosure Sale, Cancellation of Foreclosure Sale Deed and

---

[5]Defendants' MSJ, Docket Entry No. 15, p. 8.

[6]Plaintiffs' Original Petition, Exhibit D-1 to Defendants' Notice of Removal, Docket Entry No. 1-4, p. 10 ¶ 23.

[7]See Declaration of Kevin Flannigan, Exhibit A to Defendants' MSJ, Docket Entry No. 15-1, p. 3 ¶ 5.

[8]See id. ¶ 7; Servicing Transfer Letter, Exhibit A-7 to Defendants' MSJ, Docket Entry No. 15-1, p. 44.

[9]See Servicing Transfer Letter, Exhibit A-7 to Defendants' MSJ, Docket Entry No. 15-1, p. 44 (informing Plaintiff Moore that Ocwen Loan Servicing "[would] be consolidating all mortgage accounts into one company, PHH Mortgage Services ('PHH').").

Reconveyance Special Warranty Deed ("Rescission Deed") that rescinded a foreclosure sale set for March 5, 2013, after Ocwen and Wells Fargo reached a "loan workout plan" with Plaintiffs.[10]  In the Rescission Deed Plaintiffs agreed that Wells Fargo was the mortgagee of the Deed of Trust.[11]

Ocwen noticed the Property for a foreclosure sale that was to take place on January 6, 2015.[12]  On June 19, 2015, Ocwen and plaintiff Thomas Moore, Jr. entered into a Loan Modification Agreement under which the Note would be brought "contractually current" with a new principal balance of $296,179.42.[13]  However, on October 1, 2015, Ocwen notified plaintiff Thomas Moore, Jr. that he was again in default under the Loan and requested a past-due amount of $6,988.05.[14]

Plaintiffs allege that Ocwen noticed the Property for a foreclosure sale to take place on March 1, 2016.[15]  However, this sale did not proceed as scheduled.  On March 8, 2017, Ocwen served

---

[10]Rescission Deed, Exhibit A-8 to Defendants' MSJ, Docket Entry No. 15-1, p. 52.

[11]Id. at 52-56.

[12]Notice of [Substitute] Trustee Sale, attached as Exhibit 3 to Plaintiffs' Original Petition, Exhibit D-1 to Defendants' Notice of Removal, Docket Entry No. 1-4, p. 42.

[13]Loan Modification Agreement, Exhibit A-9 to Defendants' MSJ, Docket Entry No. 15-1, p. 59 ¶ 1 and p. 60.

[14]Notice of Default, Exhibit A-10 to Defendants' MSJ, Docket Entry No. 15-1, pp. 64-65.

[15]Plaintiffs' Original Petition, Exhibit D-1 to Defendants' Notice of Removal, Docket Entry No. 1-4, pp. 7-8 ¶ 16.

Plaintiffs with a Notice of Acceleration of Maturity.[16]  This notice provided for a rescission of prior acceleration notices:

> The Servicer [(Ocwen)] hereby rescinds all prior acceleration notices.  The rescission o[f] prior acceleration notices does not act as a waiver of any rights nor does the rescission(s) suspend the current rights or claims of Mortgagee, its successor or assigns. Mortgagee reserves the right to accelerate in this notice or in a separate notice and may continue to collect the debt owed by Borrower.[17]

On April 1, 2017, Thomas Moore, Jr. filed a bankruptcy petition to preclude the sale.[18]  The bankruptcy court dismissed Moore's bankruptcy petition on June 22, 2017.[19]

On June 26, 2017, Ocwen sent Plaintiffs a monthly statement that requested Plaintiffs pay $63,571.64 — less than the accelerated amount of the loan — on or before July 1, 2017.[20]  On June 27, 2017, Ocwen sent Plaintiffs a delinquency notice that stated:  "[Y]ou are

---

[16]Notice of Acceleration of Maturity, Exhibit B-1 to Defendants' MSJ, Docket Entry No. 15-2, p. 7.

[17]Id.

[18]Defendants have attached a copy of the "Party Search Results" from the Pacer Case Locator related to bankruptcy filings by Mr. Moore in the United States Bankruptcy Court for the Southern District of Texas between January 1, 2015, and March 2, 2021. See Party Search Results, Exhibit C to Defendants' MSJ, Docket Entry No. 15-3, p. 2. See also April 1, 2017, Chapter 13 Bankruptcy Petition, Exhibit C-1 to Defendants' MSJ, Docket Entry No. 15-3, pp. 44, 45, 50.

[19]Order of Dismissal, Exhibit C-2 to Defendants' MSJ, Docket Entry No. 15-3, p. 62.

[20]Mortgage Account Statement, Exhibit A-11 to Defendants' MSJ, Docket Entry No. 15-1, p. 91.

726 days delinquent on your mortgage loan. . . . Failure to bring your loan current may result in fees and foreclosure - the loss of your home."[21]

Between April 30, 2018, and May 29, 2020, Thomas Moore, Jr. filed seven additional bankruptcy petitions that the bankruptcy court ultimately dismissed.[22] During this same period, PHH sent similar monthly statements requesting Plaintiffs pay less than the principal balance of the Loan, including on the following dates: January 17, 2019; June 17, 2019; July 16, 2019; November 25, 2019; and April 16, 2020.[23]

Plaintiffs filed this lawsuit on August 12, 2020,[24] asserting causes of action for (1) declaratory judgment for violation of the statute of limitations to foreclose, (2) quiet title, and (3) violation of § 12.002 of the Texas Civil Practice and Remedies Code.[25] Plaintiffs seek declaratory relief, injunctive relief, economic damages, punitive damages, statutory damages, and attorney's fees.[26]

---

[21]Delinquency Notice, Exhibit A-12 to Defendants' MSJ, Docket Entry No. 15-1, p. 94.

[22]See Bankruptcy Petitions and Dismissal Orders, Exhibits C-3 to C-16 to Defendants' MSJ, Docket Entry No. 15-3, pp. 64-113.

[23]See Mortgage Account Statements, Exhibits A-13 to A-17 to Defendants' MSJ, Docket Entry No. 15-1, pp. 96-121.

[24]Plaintiffs' Original Petition, Exhibit D-1 to Defendants' Notice of Removal, Docket Entry No. 1-4, p. 4.

[25]Id. at 6 ¶ 10.

[26]See id. at 19-20, Prayer for Relief.

-6-

Defendants timely removed the action on September 23, 2020,[27] and filed the pending motion on October 12, 2021.[28]   Plaintiffs filed a response on November 2, 2021;[29] Defendants filed a reply on November 9, 2021;[30] and Plaintiffs filed a sur-reply on November 10, 2021.[31]

## II.   **Standard of Review**

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   <u>Anderson v. Liberty Lobby, Inc.,</u> 106 S. Ct. 2505, 2510 (1986).   The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."   <u>Celotex Corp. v. Catrett,</u> 106 S. Ct. 2548, 2552 (1986).

---

[27]Notice of Removal, Docket Entry No. 1.

[28]Defendants' MSJ, Docket Entry No. 15.

[29]Plaintiff's Response to Defendants' Motion for Summary Judgment ("Plaintiffs' Response"), Docket Entry No. 16.

[30]Defendants' Reply in Support of Motion for Summary Judgment ("Defendants' Reply"), Docket Entry No. 17.

[31]Plaintiff's Sur-Reply in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Sur-Reply"), Docket Entry No. 19.

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

-8-

III.  **Analysis**

Plaintiffs have abandoned their claims for quiet title and for alleged violations of Tex. Civ. Prac. & Rem. Code § 12.002.[32] Therefore, those claims fail as a matter of law, and Defendants' MSJ as to those claims will be granted.  All that remains is Plaintiffs' claim seeking a declaration that "any future foreclosure sale would be void as time-barred" because the four-year limitations period to foreclose has run.[33]  Defendants argue that this claim "fails as a matter of law because Defendants timely abandoned and/or rescinded acceleration."[34]

Tex. Civ. Prac. & Rem. Code § 16.035 provides a four-year limitations period on actions for judicial and non-judicial foreclosure.  If a deed of trust secured by real property contains an optional acceleration clause, "the action accrues only when the holder actually exercises its option to accelerate."  Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001) (citing Hammann v. H.J. McMullen & Co., 62 S.W.2d 59, 61 (1933)).

_____

[32]Defendants' MSJ (Docket Entry No. 15) presented arguments for summary judgment on these claims, which Plaintiffs' Response did not address (see Plaintiffs' Response, Docket Entry No. 16, p. 5). "[F]ailure to pursue [a] claim beyond [the] complaint constitute[s] abandonment." Black v. North Panola School District, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

[33]Plaintiffs' Original Petition, Exhibit D-1 to Defendants' Notice of Removal, Docket Entry No. 1-4, pp. 13-14 ¶¶ 33-41.

[34]Defendants' MSJ, Docket Entry No. 15, p. 12.

## A. Defendants Abandoned Acceleration Before Limitations Ran

A lender may "waive[] its earlier acceleration when it 'put[s] the debtor on notice of its abandonment . . . by requesting payment on less than the full amount of the loan.'" Boren v. U.S. National Bank Association, 807 F.3d 99, 104 (5th Cir. 2015). Such a notice is "'an unequivocal expression of the bank's intent to abandon or waive its initial acceleration'." Jatera Corp. v. U.S. Bank National Association as Trustee for Registered Holders of Citigroup Mortgage Loan Trust, 917 F.3d 831, 835 (5th Cir. 2019) (quoting Martin v. Federal National Mortgage Association, 814 F.3d 315, 318 (5th Cir. 2016)). Abandonment has the effect of "suspending the limitations period until the lender exercises its option to re-accelerate the note." Id. (citing Boren, 807 F.3d at 106).

The Deed of Trust contained an optional acceleration clause.[35] Plaintiffs' Original Petition asserts that "[t]he January 2015 notice of sale was preceded by notices of acceleration and notices of intent to accelerate" and that "the date when the four-year limitations period began to run is January 6, 2015."[36] But PHH and Plaintiffs entered into a Loan Modification Agreement dated May 8, 2015, whereby PHH agreed to bring the Note "contractually

---

[35]Deed of Trust, Exhibit A-2 to Defendants' MSJ, Docket Entry No. 15-1, p. 17 ¶ 21.

[36]Plaintiffs' Original Petition, Exhibit D-1 to Defendants' Notice of Removal, Docket Entry No. 1-4, p. 13 ¶¶ 36-37.

current."[37]   This   agreement   had   the   effect   of   "abandon[ing]
acceleration and restor[ing] the contract to its original terms[.]"
See Khan v. GBAK Properties, Inc., 371 S.W.3d 347, 356 (Tex. App.
— Houston [1st Dist.] 2012).  When Plaintiffs failed to comply with
their payment obligations under the modification, PHH sent them a
notice on October 1, 2015, informing them that they were in default
and again requesting less than the full amount of the loan.[38]  This
notice abandoned any acceleration that occurred on January 6, 2015,
and suspended the limitations period.  See Jatera, 917 F.3d at 835.

Plaintiffs argue that they have made "a prima facie showing
that the limitations period accrued on February 2, 2016[,]"[39]
because Defendants sent them a Notice of Acceleration of Maturity
on that date.[40]   But since February 2, 2016, Defendants sent
Plaintiffs at least five notices requesting less than the full
balance of the loan, including one as recently as April 16, 2020.[41]

1.   Abandonment Did Not Require a Warning that the Loan Would
     Be Accelerated if Plaintiffs Did Not Pay

Plaintiffs argue that there is a genuine fact dispute
regarding whether Defendants intended to abandon their acceleration

---

[37]Loan Modification Agreement, Exhibit A-9 to Defendants' MSJ,
Docket Entry No. 15-1, p. 59 ¶ 1.

[38]Notice of Default, Exhibit A-10 to Defendants' MSJ, Docket
Entry No. 15-1, pp. 64-65.

[39]Plaintiffs' Response, Docket Entry No. 16, p. 11.

[40]Notice of Acceleration, Docket Entry No. 16-4, p. 2.

[41]See Mortgage Account Statements, Exhibits A-13 to A-17 to
Defendants' MSJ, Docket Entry No. 15-1, pp. 96-121.

of February 2, 2016, because "the statements and the delinquency notice do not indicate the Loan will be accelerated if the amount requested (if any) is not paid."[42]

Plaintiffs rely on Ernst v. Ocwen Loan Servicing, LLC, No. 1:18-CV-428-RP, 2019 WL 7761444 (W.D. Tex. 2019).[43] In that case the district court held that there was a genuine fact issue surrounding a loan servicer's intent to abandon acceleration, in part because "[n]one of the monthly statements [that the servicer sent to the borrower] state[d] that the loan would be accelerated if Plaintiffs did not pay the amount demanded." Id. at *5. But the monthly statements in Ernst contained language warning that "your loan is in foreclosure." Id. at *6. That language does not appear in the notices that Defendants sent Plaintiffs in this case.

The Ernst court relied heavily on Sexton v. Deutsche Bank National Trust Company for GSAMP Trust 2007-FM2, Mortgage Pass-Through Certificates, Series 2007-FM2, 731 F. App'x 302 (5th Cir. 2018). See Ernst, 2019 WL 7761444, at *5. In Sexton a bank sent borrowers monthly statements seeking less than the full balance of the loan, but those statements advised that the "loan is in

---

[42]Plaintiffs' Response, Docket Entry No. 16, p. 15.

[43]Id. at 14. Plaintiffs also cite Pitts v. Bank of New York Mellon Trust Co., 583 S.W.3d 258, 266 (Tex. App. – Dallas 2018, no pet.), and U.S. Bank National Association v. Lamell, Civil Action No. 4:19-cv-2402, 2021 WL 1133154, at *5 (S.D. Tex. 2021). Id. at 14-15. But as in Ernst, the monthly statements at issue in these cases contained the phrase "your loan is in foreclosure[,]" which is not present in the documents at issue in this case. See Pitts, 583 S.W.3d at 266; Lamell, 2021 WL 1133154, at *5.

foreclosure." Sexton, 731 F. App'x at 307. The Fifth Circuit held that this language "arguably renders the monthly statements ambiguous, rather than unequivocal." Id. Because of this ambiguity, the Fifth Circuit scrutinized the language of the statements, ultimately holding that there was no ambiguity in part because "each notice advised that, if the Sextons did not cure the default, the bank 'will accelerate the maturity date' of the loan." Id. at 308 (emphasis in original). In other words, the Sexton court looked to the "we will accelerate your loan" language only to dispel the ambiguity created by the "your loan is in foreclosure" language. Had the "your loan is in foreclosure" language not been present, there would have been no ambiguity and thus no need to look beyond the fact that the bank was asking for less than the full amount of the loan to make the loan current.

Unlike the lenders in Ernst and Sexton, Defendants in this case did not notify Plaintiffs that their loan was in foreclosure. Instead, Defendants gave Plaintiffs notice that they could make their loan "current" by paying less than the accelerated amount.[44] The notice itself was "'an unequivocal expression of [Defendants'] intent to abandon or waive [their] initial acceleration'[,]" Jatera, 917 F.3d at 835 (quoting Martin, 814 F.3d at 318). Absent evidence of ambiguity, there is no need for the court to scour the

---

[44]See, e.g., July 16, 2019, Mortgage Statement, Exhibit A-15 to Defendants' MSJ, Docket Entry No. 15-1, pp. 107, 111 (stating that Plaintiffs' outstanding principal balance was $296,179.42 but providing that Plaintiffs could "bring [their] loan current" with a payment of $137,488.85).

notices for specific phrases that would make Defendants' intent to abandon even clearer.

## 2. Defendants' Warning That Failure to Pay "May Result" in Foreclosure Does Not Create a Fact Issue

Plaintiffs argue that because "the delinquency notice threatens foreclosure by stating that '[f]ailure to bring your loan current may result in fees and foreclosure[,]'" it resembles the notice in Deutsche Bank National Trust Co. v. Gladle, Cause No. A-19-CV-00613-SS, 2020 WL 6379281, at *8 (W.D. Tex. 2020), in which the court found a fact issue surrounding a loan servicer's intent to abandon acceleration.[45] But the notice in Gladle stated that foreclosure proceedings "would continue" if the borrowers failed to pay all of the reinstatement amount. Id. The statement that foreclosure "would continue" indicated that the foreclosure process had already begun. The Gladle court thus took the statement as evidence that the plaintiff in that case "did not abandon the 2006 acceleration[.]" Id.

By contrast, the notices at issue here state that foreclosure "may result" if Plaintiffs failed to bring their loan current.[46] Such language indicates only the possibility that Defendants might

---

[45]Plaintiffs' Response, Docket Entry No. 16, p. 16 (quoting Delinquency Notice, Exhibit A-12 to Defendants' MSJ, Docket Entry No. 15-1, p. 94).

[46]See, e.g., Delinquency Notice, Exhibit A-12 to Defendants' MSJ, Docket Entry No. 15-1, p. 94; Delinquency Notice, Exhibit A-14 to Defendants' MSJ, Docket Entry No. 15-1, p. 104.

exercise the option conferred by the Deed of Trust.   It is not equivalent to a notice stating that the option will in fact be exercised.  <u>See, e.g., Ogden v. Gibraltar Savings Association</u>, 640 S.W.2d 232, 233-34 (Tex. 1982) (holding that letter stating that "'failure to cure such breach . . . <u>may</u> result in acceleration . . . .'" was "insufficient to give notice that Gibraltar intended to exercise its option to accelerate the debt" because it "gave no clear and unequivocal notice that Gibraltar <u>would</u> exercise the option") (second emphasis added); <u>Florey v. U.S. Bank National Association,</u> No. 05-20-00306-CV, 2021 WL 2525457, at *4 (Tex. App. – Dallas June 21, 2021, no pet. h.) ("[S]tatements regarding a possible right to foreclose in the future, . . . are all inconsistent with acceleration and a then-present right to foreclose.").

3.   <u>Defendants Requested Payment</u>

Plaintiffs argue that because "[t]he delinquency notice does not contain a payment coupon[,]" it "does not actually request a payment."[47]  But Plaintiffs also acknowledge that the notice "lists an amount and says 'You must pay this amount to bring your loan current.'"[48]  Plaintiffs cite no authority for the proposition that a request for payment requires an attached payment coupon.   The

---

[47]Plaintiffs' Response, Docket entry No. 16, p. 15.

[48]<u>Id.</u> (citing Delinquency Notice, Exhibit A-12 to Defendants' MSJ, Docket Entry No. 15-1, p. 94).

court cannot read the words "You must pay this amount" as anything other than a request for payment.

The court concludes that there is no genuine factual dispute as to whether Defendants intended to abandon the acceleration of February 2, 2016. Defendants clearly and unequivocally manifested their intent to abandon acceleration by requesting less than the full amount of the loan to bring the loan current. See <u>Jatera</u>, 917 F.3d at 835.

## B.   Defendants Executed a Timely Statutory Rescission

Defendants argue that "[n]otwithstanding the abandonment of acceleration . . . PHH also unequivocally rescinded all prior accelerations on March 3, 2017 . . . ."[49]

Tex. Civ. Prac. and Rem. Code § 16.038 provides in part that

(a)   If the maturity date of a . . . note or obligation payable in installments is accelerated, and the accelerated maturity date is rescinded or waived in accordance with this section before the limitations period expires, the acceleration is deemed rescinded and waived and the note . . . shall be governed by Section 16.035 as if no acceleration had occurred.

(b)   Rescission or waiver of acceleration is effective if made by a written notice of rescission or waiver . . . .

. . .

(d)   A notice served under this section does not affect a lienholder's right to accelerate the maturity date of the debt in the future nor does it waive past defaults.

---

[49]Defendants' MSJ, Docket Entry No. 15, p. 15.

-16-

Ocwen served Plaintiffs with a notice on March 8, 2017, which provided that Ocwen "hereby rescinds all prior acceleration notices."[50] The same notice informed Plaintiffs that the loan would be accelerated again.[51]

### 1. The Rescission Meets Section 16.038's Requirements

Plaintiffs argue that because the document is titled "NOTICE OF ACCELERATION OF MATURITY[,]" and because its "main thrust" is to accelerate the loan, it is not a valid rescission.[52] The court is not persuaded by this argument. The text of Section 16.038 does not require that a written notice of rescission have a specific title, nor does it impose any other restrictions on the notice's contents. The document in question is written, it is a notice, and it explicitly provides for rescission of acceleration. It meets the statutory requirements of Section 16.038.

### 2. Re-Acceleration Language Does Not Negate Rescission

Plaintiffs also argue that the notice does not constitute a valid rescission of acceleration because it contains language that re-accelerated the loan.[53] Plaintiffs rely on Wilmington Trust, N.A. v. Rob, 891 F.3d 174, 177 (5th Cir. 2018), for the proposition

---

[50]Notice of Acceleration of Maturity, Exhibit B-1 to Defendants' MSJ, Docket Entry No. 15-2, p. 7.

[51]Id.

[52]Plaintiffs' Response, Docket Entry No. 16, pp. 20-21.

[53]Id. at 22.

-17-

that "in order [to] properly re-accelerate a loan after rescission or abandonment, a lender has to send a new notice of default followed by a new notice of acceleration."[54]  The <u>Wilmington</u> court held that because a written notice rescinding acceleration also re-accelerated the loan, the re-acceleration was not valid.  <u>Id.</u> at 176-78.  It did not hold that the rescission itself was invalid. <u>Id.</u>  The <u>Wilmington</u> decision thus only serves to call into question the propriety of the re-acceleration, which is not an issue before the court.  <u>See Florey,</u> 2021 WL 2525457, at *5 ("The Floreys cite no authority for the proposition that an attempt to foreclose without a new notice of default following clear abandonment of acceleration would somehow 'undo' the abandonment.").

The court concludes that Defendants abandoned or rescinded the acceleration of the loan before limitations ran, and that Plaintiffs' claim for a declaration that foreclosure is time-barred fails as a matter of law.

## C.  The Parties' Bankruptcy Tolling Calculations Are Immaterial

Defendants argue that "[a]ny alleged limitations period that would have expired on January 6, 2019, or in the alternative, March 1, 2020, was tolled by each of <u>seven</u> bankruptcy petitions filed by Mr. Moore for a total of 245 days" (emphasis in original).[55]  Plaintiffs argue that only the bankruptcy petitions of April 1, 2017, April 30, 2018, and August 29, 2019, activated

---

[54]<u>Id.</u>

[55]Defendants' MSJ, Docket Entry No. 15, p. 16.

the automatic stay that would toll limitations, and "[t]he total tolling for the bankruptcies was therefore only 117 days."[56]  The dispute is immaterial.  Whether the court adopted Plaintiffs' calculations or Defendants' calculations, it would still consider the aforementioned notices that abandon/rescind acceleration and thus dispose of this motion.

### IV.   Conclusion and Order

For the reasons explained above, the court concludes that there are no issues of material fact with respect to any of Plaintiffs' claims.  Accordingly, Defendants' Motion for Summary Judgment (Docket Entry No. 15) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 9th day of February, 2022.

<br>

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[56]Plaintiffs' Response, Docket Entry No. 16, p. 9.

-19-